# Chicago, Burlington and Quincy Railroad Company

## *v.*

## Bridget Dougherty.

### *Filed at Ottawa May 19, 1884.*

1. NEGLIGENCE—*of railway company in giving signals at public road crossings.* The statute (chapter 114, section 43,) requires every railroad corporation to cause a bell of at least thirty pounds weight to be rung or a steam whistle to be sounded at the distance of at least eighty rods before a public highway is reached by a train or locomotive, and kept so ringing or being sounded until the highway is reached; and when this is done, the railroad company has discharged its duty imposed by the statute, whether such signal given is heard or not. The statute does not require the giving of such signals of the approach of a train as to enable others absolutely to ascertain its approach and avoid being injured.

2. If a railway company has such a bell on an engine attached to a train as the statute requires, and it is rung in the manner required, then, so far as giving signals before the train reaches a public highway crossing is concerned, the company is without blame, whether the signal so given is observed or heeded, or not, by one attempting to cross the railroad track on the public highway.

3. Where the evidence is conflicting as to the fact whether a railway company, on the approach of one of its trains to a public road crossing, gave the statutory signals, it is error to state in an instruction, in a suit to recover damages for a personal injury to one while crossing the railroad track on a public highway, that if the defendant failed to give such signals of the approach of the train as to enable the person injured or killed to ascertain its approach and avoid injury, the company is liable.

4. APPEAL—*damages on affirmance.* Section 23, chapter 33, relating to costs, which authorizes ten per cent damages when the Supreme Court shall be of opinion that an appeal is prosecuted for delay, has no application to a case which is contested in good faith in that court. It applies only to cases appealed and not prosecuted, or such as are not prosecuted in good faith. This rule also applies to the Appellate Court.

5. INSTRUCTION—*accuracy required on issues when the evidence is conflicting.* On an issue whether a bell on an engine of a passenger train was rung eighty rods before the train reached a public road crossing, and kept ringing until the crossing was reached, witnesses for the plaintiff testified, in substance, that they did not hear the bell or whistle, although near enough to have heard it had one been rung or the other blown, while on the other

hand it was proved by the fireman and engineer the size of the bell, its character and condition, and that the bell was rung and the whistle sounded as required by the statute: *Held,* that it was a matter of grave importance that the law should be accurately given to the jury.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of La Salle county; the Hon. Josiah McRoberts, Judge, presiding.

Mr. Samuel Richolson, for the appellant:

Where the evidence is conflicting upon a vital issue of fact, and there may be doubt, each party has the right to have the jury clearly and accurately instructed as to the law of the case. *Railroad Co.* v. *Maffit,* 67 Ill. 431; *Railway Co.* v. *Clark,* 70 id. 276; *Railway Co.* v. *Henks,* 91 id. 411; *Volk* v. *Rochie,* 20 id. 299.

The statute does not require a bell to be so rung or a whistle to be so sounded as to apprise a person passing of the approach of the train. *Railroad Co.* v. *Siltman,* 67 Ill. 74.

The plaintiff's first instruction in effect tells the jury that if the defendant failed to give such signals of the approach of the train as to enable Dougherty to ascertain the approach of the train and avoid being injured by it, etc., to find for the plaintiff. This requires more than the statute requires, and is calculated to mislead the jury. The instruction is faulty in stating certain facts on one side, as affecting the defendant's liability, and giving them undue prominence, and omitting to state the law as to comparative negligence, which was directly involved.

Messrs. Leland & Gilbert, and Messrs. Mayo & Widmer, for the appellee, contended that the former rule requiring each instruction to be accurate in cases of a sharp conflict in the evidence, should not be applied in a case affirmed by the Appellate Court, as that court, by affirmance, must have found that substantial justice has been done.

The plaintiff's first instruction informs the jury as to the measure of care required on the part of Dougherty, by saying that it must appear that he, "during all the time he was driving towards said railroad crossing and attempting to pass over the same, and until his death, exercised ordinary care to ascertain whether said train was approaching," etc. It is not implied from this instruction that it was the defendant's duty to give such signals as would have enabled Dougherty to hear them and avoid injury, for the jury are immediately told that to authorize a recovery such failure to give such signals must amount to a want of ordinary care, and be the direct cause of Dougherty's death.   This instruction is sanctioned by the case of *Railway Co.* v. *Henks,* 91 Ill. 407.

The doctrine of comparative negligence was not applicable to this case.

Mr. Justice Craig delivered the opinion of the Court:

This was an action brought by Bridget Dougherty, administratrix of the estate of Bernard Dougherty, deceased, against the Chicago, Burlington and Quincy Railroad Company, to recover damages for the death of Bernard Dougherty, who was killed while attempting to cross the railroad with a team and wagon at the crossing where Columbus street crosses the railroad track, in the north part of Ottawa, on the 7th day of September, 1881.   The declaration charges the defendant with a want of ordinary care,—first, in not ringing a bell or sounding a whistle ; second, in running at too great a rate of speed ; and third, in failing to station a flagman at the crossing where the deceased was killed.   A trial of the cause before a jury resulted in a verdict and judgment in favor of the plaintiff for $5000, which was affirmed in the Appellate Court, and the railroad company appealed from the judgment of the Appellate Court.

It was urged in the Appellate Court with much earnestness that the verdict of the jury was against the weight of evidence; but that question does not arise here, as the decision of the Appellate Court is final on controverted questions of fact.

It was also insisted that the court erred in the instructions to the jury. The first instruction given for the plaintiff to which exception was taken, is as follows;

"If the jury believe, from the evidence in this case, that on or about the 7th day of September, A. D. 1881, Bernard Dougherty was killed by a passenger train of the defendant, at the point where the defendant's railroad crosses Columbus street, in the city of Ottawa; that he left him surviving Bridget Dougherty, as his widow, and Thomas Dougherty and Elizabeth Dougherty, as his only heirs at law; that said Dougherty, during all the time that he was driving towards said railroad crossing and attempting to pass over the same, and until his death, exercised ordinary care to ascertain whether said train was approaching said crossing, and to avoid being injured by said train; that said defendant drove said train over said crossing at a reckless, dangerous and improper rate of speed, or failed to give such signals of the approach of said train as to enable Dougherty to ascertain the approach of said train, and avoid being injured by it, by the exercise of ordinary care; that in so driving said train, or in so failing to give such signals, said defendant was guilty of a want of ordinary care, and that such want of ordinary care was the direct cause of Dougherty's death, and that his death was not the result of any want of ordinary care on his own part,—then and in such case the jury should find a verdict in favor of the plaintiff."

Section 43, chapter 114, of the Revised Statutes of 1874, provides: "Every railroad corporation shall cause a bell of at least thirty pounds weight, and a steam whistle, to be

placed and kept on each locomotive engine, and shall cause the same to be rung or whistled, by the engineer or fireman, at the distance of at least eighty rods from the place where the railroad crosses or intersects any public highway, and shall be kept ringing or whistling until such highway is reached."

In the third count of the declaration it was averred that defendant failed to keep a bell of thirty pounds weight to be rung and kept ringing, or a steam whistle to be in like manner sounded, for the distance of eighty rods, until the said crossing was reached by the locomotive. This averment was denied by defendant's plea, and hence an issue was presented by the pleadings for the jury to pass upon and determine, from the evidence which might be introduced bearing upon this branch of the case. In support of the averment of the declaration, the plaintiff called witnesses who, in substance, testified that they did not hear the bell or whistle, although near enough to the train to hear, had the one been rung or the other blown. On the other hand, the defendant proved, by the fireman and engineer, the size of the bell, its character and condition; that the bell was rung and whistle sounded, as required by the statute. Both by the pleadings and the evidence, an issue was presented whether proper signals of the approach of the train had been given by the railroad company before the crossing was reached. Under the issue thus presented it was a matter of grave importance that the law should be accurately given to the jury, in order that they might reach a correct conclusion, and thus mete out justice and right between the two contending parties. It will be observed that the statute heretofore cited requires a bell of at least thirty pounds weight on the engine to be rung at the distance of at least eighty rods before a public highway is reached, and shall be kept ringing until the highway is reached, or a steam whistle shall be sounded in like manner as a bell is required to be rung; but the statute does not

require a bell to be rung or a whistle sounded in such a manner as will absolutely give notice to travelers of the approach of the train. The act is to be done in a certain specified manner, and when that is done the railroad company has discharged the duty imposed by law, whether the signal given is heard or not. But the instruction declares that the railroad shall be liable if it "failed to give such signals of the approach of said train *as to enable Dougherty to ascertain the approach of said train, and avoid being injured,* by the exercise of ordinary care." This requirement is not imposed by the statute, and it was error to direct the jury that defendant was bound to do more than the statute had imposed upon it. Under this instruction the jury may have found, from the evidence, that the defendant rung the bell as required by the statute, and yet, unless the sound of the bell was such as to attract the attention of Dougherty and enable him to ascertain that the train was approaching, the company would be liable. The statute has never, so far as we are advised, received such a construction. Indeed, in *Peoria, Pekin and Jacksonville R. R. Co.* v. *Siltman,* 67 Ill. 72, an instruction in almost the identical language was condemned. (See, also, *Chicago and Alton R. R. Co.* v. *Robinson,* 106 Ill. 142.) If the railroad company had such a bell on the engine as the statute requires, and it was rung in the manner required, then, so far as giving signals is concerned, no blame can be attached to the company, whether the signals were observed or heeded by Dougherty or not. We think the instruction was erroneous,—and that, too, on a vital point in the case,— and for this error the judgment will be reversed. Nothing herein said, however, has any reference whatever to the supposed liability of the railroad company for a failure to station a flagman at the crossing where the accident occurred.

Other questions have been raised and argued by appellant's counsel, but we do not think it necessary to remark upon

them here.   The point indicated is decisive of the judgment, and the other questions argued will not be likely to arise on another trial, and hence it is not necessary to consume time in the discussion of them here.

The appellee has assigned as a cross-error that the Appellate Court erred in not giving appellee judgment for a sum not exceeding ten per cent on the amount of the judgment of the circuit court, as damages.   Section 23, chapter 33, of the statute entitled "Costs," which authorizes ten per cent damages where the Supreme Court shall be of opinion that the appeal was prosecuted for delay, has never been understood to apply to a case which has been contested in good faith in the Supreme Court, but the statute has only been applied to such cases as were appealed and not prosecuted, or such as were not prosecuted in good faith.   Upon this question we are of opinion the decision of the Appellate Court was correct, but for the error indicated the judgment will be reversed, and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE MULKEY: I do not concur in the decision of this case.   The instruction complained of, in my judgment is not obnoxious to the objection urged against it.   But conceding it is, it is manifest it could not have materially affected the result, so far as the finding of the jury is concerned.   The principle is well settled by a long line of decisions, that this court will not reverse for a mere formal error that could not have misled the jury.

Mr. JUSTICE WALKER: I dissent, and concur with my brother MULKEY.